UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
SUNGCHAN SONG, HANNA SONG,
KAREN LUCAS-BARROS, and ASEA JO,

                    Plaintiff,

       -against-

KENSINGTON INTERNATIONAL, INC.,
JOHN GELIN, EYAN EDWARDS,
RHINA HERNANDEZ, and THE
BUSINESS BUYERS CLUB, LLC,

                    Defendants.
---------------------------------------------------------X

                        **REPORT AND**
                        **RECOMMENDATION**
                        21-CV-543 (HG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Plaintiffs Sungchan Song and Hanna Song ("the Songs"), Karen Lucas-Barros, and Aseo Jo initiated this action on February 1, 2021, against Defendants Kensington International, Inc. ("Kensington"), John Gelin, Eyan Edwards, Rhina Hernandez, and The Business Buyers Club, LLC ("Buyers Club"), alleging various claims arising out of agreements between the parties to enter into joint venture investment partnerships (the "Joint Venture Agreements" or the "Agreements"). (Compl., ECF No. 1.)

      On April 17, 2023, the Clerk of Court certified Defendants' default, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, and Plaintiffs subsequently moved for default judgment on July 14, 2023. (Clerk's Entry of Default, ECF No. 39; Notice of Pls.' Mot. for Default J. Against Defs. Kensington Int'l, Inc., John Gelin, Rhina Hernandez, & The Bus. Buyers Club, LLC, ECF No. 41 (hereinafter "Mot. for Default J.").) For the reasons set forth below, this Court recommends that Plaintiffs' motion be granted in part and that Plaintiff Aseo Jo's claims be dismissed without prejudice.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.  The Joint Venture Agreements

The complaint alleges that the Songs entered into a Joint Venture Agreement with Kensington in November 2017, and Plaintiffs Lucas-Barros and Jo entered into a Joint Venture Agreement with Kensington in December 2017. (Compl., ECF No. 1, ¶¶ 18–20.) Plaintiffs attached the Agreements to the complaint. (Joint Venture Agreements, ECF Nos. 1-2, 1-3, 1-4.) The Joint Venture Agreements appended to the complaint indicate that the Agreements are between Kensington and Plaintiffs Sungchan Song (ECF No. 1-2), Karen Lucas-Barros (ECF No. 1-3), and Aseo Jo (ECF No. 1-4).

Plaintiffs allege that Kensington presented itself as a real estate investment firm that was reaching out to individual investors for joint venture agreement partnerships. (Compl., ECF No. 1, ¶¶ 22–23.) Pursuant to their separate Joint Venture Agreements, Sungchan Song agreed to lend up to $550,000 to Kensington, Lucas-Barros agreed to lend up to $279,000 to Kensington, and Jo agreed to lend up to $100,000 to Kensington, which would then invest the money in residential properties in and around Newark, New Jersey. (*Id.* ¶¶ 60, 62, 65.) Plaintiffs all relied on loans to raise the funds needed to then make loans to Kensington: the Songs borrowed $478,380, Lucas-Barros borrowed $279,470, and Jo borrowed $35,000 — all of which went to Kensington after origination and credit broker fees were subtracted.[1] (*Id.* ¶¶ 60, 62, 65.) Under the agreements, Kensington promised to make debt service payments on Plaintiffs' loans, fully repay

---

[1] After these fees were subtracted, Kensington received $398,839 from the Songs, $237,514 from Lucas-Barros, and the remainder of $35,000 minus origination fees and credit broker fees from Jo. (Compl., ECF No. 1, ¶¶ 60, 62, 65.)

their investments within one year, and reimburse them for any costs they incurred in connection with their loans. (*Id.* ¶ 4.)

Plaintiffs claim that Kensington either exaggerated its ability to purchase properties in the Newark area or that Kensington had no intention of making these purchases. (*Id.* ¶ 47.) Plaintiffs also claim that Kensington invested almost all of Plaintiffs' capital in and around Nashville, Tennessee. (*Id.* ¶¶ 35, 68–70, 92.) Plaintiffs allege that Kensington's full repayments of the loans are overdue by more than two years, that no explanation for the breaches was given, and that Kensington never provided an accounting of how Plaintiffs' investments were used. (*Id.* ¶ 80.)

## II.  Procedural History

Plaintiffs filed the complaint on February 1, 2021, alleging that Defendants: (1) fraudulently induced Plaintiffs to enter into the Joint Venture Agreements; (2) breached the Joint Venture Agreements; (3) violated the covenant of good faith and fair dealing; (4) breached their fiduciary duties; (5) acted negligently; and (6) fraudulently concealed multiple relevant representations. (*Id.* ¶¶ 142–43, 150, 157, 161, 165, 169.) Plaintiffs further alleged their entitlement to an equitable accounting against Defendants. (*Id.* ¶ 176.) As to service, the record shows that the summons and complaint were served as follows: (1) on February 8, 2021, Defendants Gelin[2] and Hernandez were served at their residence; (2) on February 9, 2021, Buyers Club was

---

[2] The affidavit of service as to Defendant Gelin appears to contain a typographical error in that it states service was made on John Golin. (Aff. of Service as to Gelin, ECF No. 13, at ECF p. 2.) Because Defendant Gelin is appropriately identified in the summons, (Summons in a Civil Action, ECF No. 4), the Court finds that the error in the affidavit of service "goes only to the evidentiary value of the affidavit and does not impact the court's jurisdiction over defendant." *State Higher Educ. Servs. Corp. v. Sparozic*, 826 N.Y.S.2d 493, 195 (App. Div. 3d Dep't 2006) (citing N.Y. C.P.L.R. § 306).

served through its attorney, "who specifically stated that [they] were authorized to accept service" on its behalf, (Aff. of Serv., ECF No. 13, at ECF p. 5); (3) on February 17, 2021, Kensington was served through its registered agent for service of process; and (4) on February 17, 2021, Edwards was served at his residence. (Affs. of Serv., ECF No. 13.) Edwards filed an answer to the complaint on April 9, 2021, and Plaintiffs later settled with Edwards. (*See* Answer, ECF No. 14; Notice of Settlement, ECF No. 34.) The stipulation of dismissal for Edwards was filed on February 24, 2023, and Edwards was dismissed from the case on February 28, 2023. (Stip. of Dismissal, ECF No. 35; Feb. 28, 2023 ECF Order.) The remaining Defendants (referred to herein as "Defendants" or the "nonappearing Defendants") have failed to respond to the complaint. (*See* Certificate of Default, ECF No. 39.)

On July 14, 2023, Plaintiffs filed a motion for default judgment and supporting documents, including a memorandum of law, a declaration by Plaintiffs' attorney, a declaration by Plaintiff Sungchan Song, and a declaration by Plaintiff Lucas-Barros.[3] (*See* Mot. for Default J., ECF No. 41; Pls.' Mem. of Law in Supp. of Mot. for Default J. Against Defs. Kensington Int'l, Inc., John Gelin, Rhina Hernandez, & The Business Buyers Club, LLC, ECF No. 42-1 (hereinafter "Pls.' Mem. of Law"); Decl. of Joshua L.

---

[3] Although the complaint alleges seven causes of action against Defendants, Plaintiffs only address their claim for breach of contract in their memorandum of law. (Pls.' Mem. of Law, ECF No. 42-1, at 1 (summarizing causes of action in the complaint); *id.* at 7 ("Here, at the very least, Plaintiffs' factual allegations in their complaint state a valid claim for breach of contract.").) Plaintiffs confirmed on the record that they are abandoning all claims other than breach of contract for the purposes of the motion for default judgment. (Jan. 8, 2024 ECF Min. Entry & Order.) Accordingly, the Court deems that the remaining claims have been abandoned. *Cf. Donohue v. Marsh*, No. 19-CV-207 (RPK) (RML), 2022 WL 411025, at *8 (E.D.N.Y. Sept. 8, 2022) ("Plaintiff's acknowledgement of all his claims, his specification of the four valid claims, and his defense of those fo[u]r claims alone are sufficient to permit 'a court [to] . . . infer' that the remaining claims have been abandoned." (citing *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014))).

4

Crowell in Supp. of Pls.' Mot. for Default J., ECF No. 42-2; Decl. of Sungchan Song in Supp. of Mot. for Default J., ECF No. 42-6 (hereinafter "Song Decl."); Decl. of Karen Lucas-Barros in Supp. of Mot. for Default J., ECF No. 42-7 (hereinafter "Lucas-Barros Decl.").) On July 14, 2023, the Honorable Hector Gonzalez referred the default motion to the undersigned magistrate judge. (July 14, 2023 ECF Order.) On July 17 and July 26, 2023, the Court issued orders directing Plaintiffs to provide proof of compliance with E.D.N.Y. Local Civil Rule 55.2. (July 17, 2023 ECF Order; July 26, 2023 ECF Order.) Plaintiffs then filed proof of mailing of the default motion paperwork to Defendants Kensington and Buyers Club at their last known business addresses. (Suppl. Decl. of Joshua L. Crowell Showing Proof of Mailing of Pls.' Mot. for Default J., ECF No. 43.) On August 4, 2023, the Court issued notice of a hearing on the default motion and directed that the notice be sent to eight addresses associated with Defendants, together with a full copy of the docket sheet. (Aug. 4, 2023 ECF Scheduling Order, ECF No. 45.) On September 19, 2023, the Court held a default motion hearing, and Defendants did not appear. (*See* Sept. 19, 2023 ECF Min. Entry & Order.) To date, no attorney has appeared for Defendants.

On January 4, 2024, the Court scheduled a status conference to discuss questions related to subject matter jurisdiction and the claims being asserted in the motion for default judgment. (Scheduling Order, ECF No. 52.) At the status conference, Plaintiffs confirmed that Plaintiff Aseo Jo does not individually meet the amount in controversy threshold for diversity jurisdiction, and that the Court therefore lacks subject matter jurisdiction with respect to Plaintiff Jo's claims. Plaintiffs also confirmed they were abandoning all claims other than breach of contract. (Jan. 8, 2024 ECF Min. Entry & Order.) Furthermore, Plaintiffs confirmed that because Plaintiff Hanna Song and Defendant Hernandez are not parties to the contracts, Plaintiff Hanna Song's claims and

all claims alleged against Defendant Hernandez are withdrawn for purposes of the default motion. (*Id.*) As requested during the conference, Plaintiffs made a supplemental filing on January 19, 2024, addressing the citizenship of the parties. (Pls.' Suppl. Br. in Supp. of Mot. for Default J., ECF No. 53.) In the supplemental filing, Plaintiffs withdrew their claims against Buyers Club due to their inability to adequately allege the citizenship of the LLC. (*Id.* at 4.)

## DISCUSSION

### I.  Jurisdiction

As courts of limited jurisdiction, federal courts are obligated to "determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Federal courts have original jurisdiction when a "federal question" is presented, 28 U.S.C. § 1331, or when there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, *id.* § 1332. "If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000); *see also* Fed. R. Civ. P. 12(h)(3).

### A.  Complete Diversity

Diversity jurisdiction requires "complete diversity"; that is, the citizenship of each plaintiff must be diverse from the citizenship of each defendant. *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) (citing *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998)). A person's citizenship is determined by their domicile. *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) (quotation marks omitted). The Second Circuit has described domicile as "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*,

6

232 F.3d 38, 42 (2d Cir. 2000) (quotation marks omitted). For diversity purposes, it is well established that a limited liability company ("LLC") takes on the citizenship of each of its members. *Platinum-Montaur Life Scis., LLC*, 943 F.3d at 615.

Here, Plaintiffs filed their complaint asserting diversity jurisdiction under 28 U.S.C. § 1332. (Compl., ECF No. 1, ¶ 15.) The complaint states that Plaintiffs "reside[]" in California and Defendants "reside[]" in New York. (*Id.*) However, "[a]n individual's citizenship, within the meaning of the diversity statute, is determined by [their] domicile," *Van Buskirk*, 935 F.3d at 53, and "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business," 28 U.S.C. § 1332(c)(1); residence is insufficient. In early January, the Court directed Plaintiffs to file a supplemental submission[4] addressing the citizenship of Plaintiffs and Defendants. (Jan. 8, 2024 ECF Min. Entry & Order.) Plaintiffs Sungchan Song and Lucas-Barros each filed a declaration that their domicile is California. (Suppl. Decl. of Sungchan Song in Supp. of Pls.' Mot. for Default J., ECF No. 53-1, at ECF pp. 5–6; Suppl. Decl. of Karen Lucas-Barros in Supp. of Pls.' Mot. for Default J., ECF No. 53-1, at ECF pp. 8–9.) Defendant

---

[4] "[W]hen the record as a whole, as supplemented, establishes the existence of the requisite diversity of citizenship between the parties, we may simply deem the pleadings amended so as to properly allege diversity jurisdiction." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 64 (2d Cir. 2009) ("Although a plaintiff premising federal jurisdiction on diversity of citizenship is required to include in its complaint adequate allegations to show that the district court has subject matter jurisdiction, *see, e.g.,* Fed. R. Civ. P. 8(a)(1), its failure to do so does not always require that the action be dismissed, for 'the actual *existence* of diversity jurisdiction, *ab initio,* does not depend on the complaint's compliance with these procedural requirements.'" (quoting *Jacobs v. Patent Enforcement Fund, Inc.*, 230 F.3d 565, 568 (2d Cir. 2000) (emphasis in original)).

Kensington is a corporation incorporated in New York;[5] Plaintiffs' supplemental submission asserts that Kensington's principal place of business is also in New York. (Pls.' Suppl. Br. in Supp. of Mot. for Default J., ECF No. 53, at 2–3.) Plaintiffs further assert that Defendant Gelin is domiciled in New York. (*Id.* at 2.) The Court respectfully recommends finding that there is complete diversity of citizenship between Plaintiffs and Defendants.

## B. Amount in Controversy

Diversity jurisdiction requires a "reasonable probability" that the amount in controversy exceeds $75,000, the minimum amount to give a district court jurisdiction. *Smulley v. Safeco Ins. Co. of Illinois*, No. 21-CV-2124, 2022 WL 16753118, at *1 (2d Cir. Nov. 8, 2022); *see also* 28 U.S.C. § 1332. "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quotation marks omitted). There is a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* (quotation marks omitted); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that . . . the sum claimed by the plaintiff controls if the claim is apparently made in good faith." (footnote omitted)). "Where, as here, multiple plaintiffs are asserting 'separate claims,' each

---

[5] Kensington's registration with the New York Department of State, Division of Corporations indicates it is incorporated in New York. *See* Entity Information, Department of State Division of Corporations, https://apps.dos.ny.gov/publicInquiry/#search (last visited Jan. 3, 2024) (enter "Kensington International, Inc." in EntityName field, select Corporation under Entity List, then select Search the database).

plaintiff must satisfy this requirement individually." *Agoliati v. Block 865 Lot 300 LLC*, No. 22-51, 2023 WL 405769, at *2 (2d Cir. Jan. 26, 2023) (citing *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 933 (2d Cir. 1998)).

The complaint alleges damages for Plaintiffs as follows: (1) over $200,000 for Sungchan Song; (2) over $200,000 for Lucas-Barros; and (3) $13,232 for Jo. (Compl., ECF No. 1, ¶¶ 131, 133, 135.) Plaintiffs Sungchan Song and Lucas-Barros have each adequately alleged an amount in controversy over $75,000; individually, Plaintiff Jo has not.[6] Accordingly, the Court recommends dismissing Plaintiff Jo's claims for want of subject matter jurisdiction, with leave to amend. *See Agoliati*, 2023 WL 405769, at *2 ("If the district court determines that it lacks diversity jurisdiction, it must dismiss the case without prejudice.").

## II.  Legal Standards for Default Judgment

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may then enter a default judgment. Fed. R. Civ. P. 55(b)(2); *see also* E.D.N.Y. Local Civ. R. 55.2(b). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound

---

[6] Plaintiffs' counsel has acknowledged on the record that Plaintiff Jo's claims do not individually meet the amount in controversy threshold for diversity jurisdiction, and that the Court therefore lacks subject matter jurisdiction with respect to those claims. (Jan. 8, 2024 ECF Min. Entry & Order.)

discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."[7] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant[s'] liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Under Federal Rule of Civil Procedure 55(b)(2), courts have discretion to decide whether an evidentiary hearing is necessary or whether the amount of damages can be determined based on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co.*,

---

[7] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having reviewed the filings in this case, the Court finds that Plaintiffs' motion papers comport with these rules. Specifically, Plaintiff (1) requested a certificate of default in accordance with Local Rule 55.1(a), (*see* Req. for Certificate of Default, ECF No. 37); (2) demonstrated that Defendants have failed to defend the action and that the pleadings were properly served, in accordance with Local Rule 55.1(b), (*see* Affs. of Service, ECF Nos. 13; Pls.' Mem. of Law, ECF No. 42-1, at 6–7); (3) certified the mailing of the motion papers to Defendants Gelin and Hernandez, at their last known residence, (Decl. of Joshua L. Crowell Showing Proof of Mailing of Pls.' Mot. for Default J., ECF No. 43); and (4) certified the mailing of motion papers to Kensington and Buyers Club at their business addresses, in accordance with Local Rule 55.2(c), (*see id.*). In addition, Plaintiffs have demonstrated that Defendant Gelin "is not an infant, in the military, or an incompetent person," as required by Local Rule 55.1(b)(1). (Decl. of Joshua L. Crowell in Supp. of Req. for Certificate of Default, ECF No. 37-1, ¶ 6; Decl. of Joshua L. Crowell Regarding Pls.' Compliance with the Servicemembers Civil Relief Act, ECF No. 54.)

*Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Here, too, the "plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989))). In the default posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). For the following reasons, the Court recommends entry of a default judgment in favor of Plaintiffs Sungchan Song and Lucas-Barros, and an award of damages and interest, as detailed below.

## III. Entry of Default

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the

failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

### A. Willfulness

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g.*, *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *see also Antoine*, 489 F. Supp. 3d at 81.

Defendants' failure to respond or otherwise appear in this action supports a finding of willfulness. The record shows that Plaintiffs provided adequate notice of this case to Defendants at the outset. Specifically, Plaintiffs served Kensington on February 17, 2021, and Buyers Club on February 9, 2021, via service on a registered agent in New York, as permitted by New York law. (Affs. of Serv., ECF No. 13, at ECF pp. 1, 5); *see* Fed. R. Civ. P. 4(e)(1) & (h)(1)(a); N.Y. C.P.L.R. § 311-a(a); N.Y. Bus. Corp. Law § 306(a); *see also Smart Team Glob. LLC v. HumbleTech LLC*, No. 19-CV-4873 (AJN) (BCM), 2022 WL 847301, at *2, 5 (S.D.N.Y. Feb. 18, 2022) (finding that New York law permits service upon a limited liability company via its registered agent). As to Defendants Gelin and Hernandez, Plaintiffs served the summons and complaint on a person over the age of 18 at their residences on February 8, 2021, consistent with Federal Rule of Civil Procedure 4(e)(2)(B). (Affs. of Serv., ECF No. 13, at 2, 4.)

Defendants failed to answer within 21 days of service. (*See* Affs. of Serv., ECF No. 13.) Defendants likewise failed to respond after Plaintiffs moved for default judgment, and they also failed to attend the default hearing held by the Court, notwithstanding a scheduling order being sent to the nonappearing Defendants directly from the Court. (*See* Aug. 4, 2023 Scheduling Order, ECF No. 45 (scheduling default hearing for Sept. 19, 2023); Sept. 19, 2023 ECF Min. Entry & Order.) In light of Defendants' failure to respond, despite being provided notice at least three times of this proceeding, the Court weighs this factor in favor of default.

## B. Meritorious Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendants have entirely failed to respond to the complaint. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

## C. Prejudice

"The final factor the Court must consider is whether the non-defaulting part[y] would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

In light of Defendants' failure to respond to both Plaintiffs' and the Court's notices, "there is no indication that requiring Plaintiffs to take further steps . . . would be effective in eliciting a response from Defendants." *Mason Tenders*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiffs would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of default. Seeing no other equitable reason for denying Plaintiffs' motion, the Court recommends entering a default judgment.

## IV. Defendants' Liability for Breach of Contract[8]

"Under New York law, a breach of contract claim requires a plaintiff to allege that '(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages.'" *Shinano Kenshi Corp. v. Honeywell Int'l, Inc.*, No. 22-CV-3704 (LGS), 2023 WL 2431327, at *3 (S.D.N.Y. Mar. 9, 2023) (quoting *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022)).

### A. Kensington

Plaintiffs assert that Kensington breached the Joint Venture Agreements, which were attached and incorporated into the complaint. (Compl., ECF No. 1, ¶ 150; Joint Venture Agreements, ECF Nos. 1-2, 1-3; *see* Pls.' Mem. of Law, ECF No. 42-1, at 7.) As noted above, the relevant Joint Venture Agreements were made between Kensington

---

[8] Plaintiffs stated on the record that Plaintiff Hanna Song withdraws her breach of contract claim for the purposes of the default motion, as she is not a party to the contracts. (Jan. 8, 2024 ECF Min. Entry & Order.) Additionally, Plaintiffs withdrew the breach of contract claims as against Defendant Hernandez, who was also not party to the contracts. (*Id.*) Similarly, Plaintiffs have withdrawn their claims against Buyers Club due to a lack of information necessary to establish diversity of citizenship. (Pls.' Suppl. Br. in Supp. of Mot. for Default J., ECF No. 53, at 4.) Accordingly, the Court assesses the breach of contract claim by Plaintiffs Sungchan Song and Karen Lucas-Barros against Defendants Kensington and Gelin.

and Plaintiffs Sungchan Song and Karen Lucas-Barros. (Joint Venture Agreements, ECF Nos. 1-2, 1-3.) The Joint Venture Agreements provided for Plaintiffs to loan Kensington funds up to specified amounts. (*See id.* § I ¶ 1.) Plaintiffs allege that they performed in accordance with the Agreements by making these loans. (*See* Compl., ECF No. 1, ¶¶ 60, 62.) Plaintiffs allege that Kensington breached the Agreements as follows:

(1) Kensington ceased making debt service payments, (*see id.* ¶¶ 72–73; *see also* Joint Venture Agreements, ECF Nos. 1-2, 1-3, § II ¶ 2); (2) Kensington failed to make full repayment of the loan principal amounts, (*see* Compl., ECF No. 1, ¶¶ 74–75; *see also* Joint Venture Agreements, ECF Nos. 1-2, 1-3, § II ¶ 5); and (3) Kensington failed to reimburse Plaintiffs for interest, origination costs, late fees, or other fees or costs incurred on the loans, (*see* Compl., ECF No. 1, ¶¶ 74, 76–77; *see also* Joint Venture Agreements, ECF Nos. 1-2, 1-3, § II ¶¶ 1, 5). (Pls.' Mem. of Law, ECF No. 42-1, at 7.) Plaintiffs allege that these breaches resulted in damages. (*See* Compl., ECF No. 1, ¶¶ 130–34.) Accordingly, the Court recommends finding that Plaintiffs have satisfactorily alleged the elements of a breach of contract claim against Kensington.

### B. Defendant Gelin

Plaintiffs allege that Defendant Gelin is liable for Kensington's breaches of the Joint Venture Agreements. (*Id.* ¶ 151.) Plaintiffs allege that the Joint Venture Agreements are binding on Kensington's directors and officers, and Plaintiffs allege that Defendant Gelin "held himself out as Kensington's Chief Executive Officer." (*Id.* ¶¶ 26, 82; *see also* Joint Venture Agreements, ECF Nos. 1-2, 1-3, § VII.) Plaintiffs further allege that Defendant Gelin personally guaranteed Kensington's debt under the Joint Venture Agreement. (*See* Compl., ECF No. 1, ¶¶ 26, 54, 57; *see also* Joint Venture Agreements,

ECF Nos. 1-2, 1-3, Schedule 2.[9]) As Plaintiffs have alleged that Defendant Gelin is bound by Section VII of the Joint Venture Agreements, that he personally signed the Agreements, and that he executed a personal guarantee of Kensington's debt under the Agreements, the Court recommends finding that Defendant Gelin is liable for breach of contract.

## V. Damages

Having found that Defendants' default constitutes an admission of liability with respect to Plaintiffs' claim for breach of contract, and that entry of default judgment is appropriate, the Court now must determine the appropriate damages. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro. Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (explaining that although the allegations in a complaint related to liability are deemed admitted upon entry of a default judgment, a default "is not considered an admission of damages" (quotation marks omitted)). "The court must determine the amount of damages, actual or statutory, that may be assessed," and "ensure that there is a reasonable basis for the damages specified in a default judgment." *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011). As discussed above, "[t]he plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc.*, 2020

---

[9] Plaintiffs acknowledge that the guarantee as to Plaintiff Sungchan Song's contract is unsigned and allege that Kensington did not provide Sungchan Song a copy of the executed agreement. (Compl., ECF No. 1, ¶ 58; *see also* Joint Venture Agreement, ECF No. 1-3, Schedule 2 (including a signed copy of the personal guarantee with Plaintiff Lucas-Barros' Agreement).) Because Defendants did not appear or participate in this action, Plaintiffs were not able to engage in discovery to obtain an executed version. In the default posture, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). Thus, the Court accepts as true Plaintiff Song's allegations that Kensington executed the agreement and Gelin executed the personal guarantee.

WL 5519200, at *3. Courts have discretion under Federal Rule of Civil Procedure 55(b)(2) to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A.*, 951 F.2d at 508. In addition, the moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp.*, 653 F.2d at 65.

Here, as to the breach of contract claim, Plaintiffs seek damages in the amount of $584,083, plus prejudgment interest at a rate of nine percent per annum. (Pls.' Mem. of Law, ECF No. 42-1, at 1.)

### A. Breach of Contract Damages

"The Court begins its analysis with the 'fundamental principle that damages for breach of contract should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract.'" *Aquavit Pharmaceuticals, Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351 (VEC) (RWL), 2023 WL 2396511, at *7 (S.D.N.Y. Feb 17, 2023) (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 262 (2d Cir. 2002)), *report and recommendation adopted sub nom. Aquavit Pharms., Inc. v. U-bio Med., Inc.*, 2023 WL 2584198 (S.D.N.Y. Mar. 21, 2023). In New York, "[g]eneral damages are the natural and probable consequence of the breach of a contract." *Biotronik A.G. v. Conor Medsystems Ir., Ltd.*, 22 N.Y.3d 799, 805 (2014) (quotation marks omitted)). They include "money that the breaching party agreed to pay under the contract." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007).

### 1. *Plaintiff Sungchan Song*

Plaintiff Sungchan Song represents that he "obtain[ed] 12 loans for a combined amount of $478,380[,] . . . [which included] origination and credit broker fees of $82,425." (Song Decl., ECF No. 42-6, ¶ 6.) Plaintiff Song disbursed the entire principal amount of $395,955 to Kensington. (*Id.* ¶ 7; *see also id.* at ECF pp. 25–29 (copies of four

checks and one wire transfer from Plaintiff Song to Defendant Buyers Club totaling $395,955.64).) As discussed above, Plaintiffs established that Defendant Kensington and, by extension, Defendant Gelin were contractually obligated to make full repayment of the loan principal amounts and reimburse Plaintiffs for interest, origination costs, late fees, or other fees or costs incurred on the loans. (Compl., ECF No. 1, ¶¶ 74–77; *see also* Joint Venture Agreements, ECF Nos. 1-2, 1-3, §§ II ¶ 1, 5.) Plaintiff Song represents that Kensington "has made total debt service payments of no more than $123,000." (Song Decl., ECF No. 42-6, ¶ 13.) Accordingly, the Court recommends that Plaintiff Song be awarded $355,380[10] in damages for his breach of contract claim.

2. *Plaintiff Karen Lucas-Barros*

Plaintiff Lucas-Barros represents that she "obtain[ed] seven loans for a combined amount of $279,470[,] . . . [which included] origination and credit broker fees of $41,956." (Lucas-Barros Decl., ECF No. 42-7, ¶ 5.) Plaintiff Lucas-Barros disbursed the entire principal amount of $237,514 to Kensington. (*Id.* ¶ 6; *see also id.* at ECF p. 22 (copy of a funds transfer request authorization from Plaintiff Lucas-Barros to Defendant Kensington in the amount of $237,514.50).) Plaintiff Lucas-Barros further represents that Kensington "has made total debt service payments of no more than $62,000." (Lucas-Barros Decl., ECF No. 42-7, ¶ 11.) Accordingly, and for the same reasons discussed

---

[10] This amount is equal to the loan principal amount ($395,955) plus origination and credit broker fees ($82,425) less payments made by Kensington ($123,000). (Song Decl., ECF No. 42-6, ¶ 13.)

above as to Plaintiff Sungchan Song, the Court recommends that Plaintiff Lucas-Barros be awarded $217,470[11] in damages for her breach of contract claim.

### B. Prejudgment Interest

In New York, "[a] plaintiff who prevails on a claim for breach of contract is entitled to pre-judgment interest as a matter of right." *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 630 (S.D.N.Y. 2011) (alteration omitted) (citing *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991)). Under New York law, prejudgment interest accrues at a rate of nine percent per annum and is calculated "from the earliest ascertainable date the cause of action existed . . . to the date the verdict was rendered or the report or decision was made." N.Y. C.P.L.R. §§ 5001(b)–(c), 5004.

With respect to prejudgment interest, Plaintiff Song alleges that Defendants breached their agreement on November 16, 2018, and Plaintiff Lucas-Barros alleges that Defendants breached their agreement on December 19, 2018.[12] (Compl., ECF No. 1, ¶ 75 (noting that repayment was due by the one-year maturity date of each of the Agreements); Joint Venture Agreement, ECF No. 1-2, at ECF p. 2 (noting, for Sungchan Song, that the agreement was made on November 16, 2017); Joint Venture Agreement, ECF No. 1-3, at ECF p. 2 (noting, for Lucas-Barros, that the agreement was made on December 19, 2017).) Accordingly, the Court recommends that prejudgment interest be

---

[11] This amount is equal to the loan principal amount ($237,514) plus origination and credit broker fees ($41,956) less payments made by Kensington ($62,000). (Lucas-Barros Decl., ECF No. 42-7, ¶¶ 5, 11.)

[12] These dates represent the maturity dates for Plaintiffs Song and Lucas-Barros, respectively, upon which dates Kensington was contractually obligated to have made full repayment of the principal loan amounts. (*See* Joint Venture Agreements, ECF Nos. 1-2, 1-3, § II ¶ 5.)

calculated at the rate of nine percent per annum from November 16, 2018, for the $355,380 owed to Plaintiff Song and from December 19, 2018, for the $217,470 owed to Lucas-Barros, resulting in per diem interest rates of $87.63 ($355,380 x 0.09/365) and $53.62 ($217,470 x 0.09/365), respectively.

### C. Post-Judgment Interest

Post-judgment interest is mandatory and governed by federal statute. *See* 28 U.S.C. § 1961(a); *Plaza Motors of Brooklyn, Inc. v. Rivera*, No. 19-CV-6336 (LDH) (RLM), 2020 WL 9814102, at *12 (E.D.N.Y. Sept. 17, 2020). Therefore, the Court respectfully recommends that Plaintiffs be awarded post-judgment interest using the federal rate set forth in 28 U.S.C. § 1961(a), calculated from the date the Clerk of the Court enters judgment in this action until the date of payment.

### CONCLUSION

For the foregoing reasons, the Court respectfully recommends dismissal of (1) all claims other than the breach of contract claims alleged by Plaintiffs Sungchan Song and Lucas-Barros against Defendants Kensington and Gelin, as abandoned; (2) Plaintiff Aseo Jo's claims for lack of subject matter jurisdiction, which dismissal should be without prejudice; and (3) all claims against Buyers Club, without prejudice, due to insufficient allegations as to citizenship. With respect to Plaintiff Sungchan Song and Plaintiff Lucas-Barros' claims for breach of contract, the Court recommends finding that entry of default is warranted and that, under the default judgment standard, Plaintiffs have established that Defendants Kensington and Gelin are liable for breach of contract.

Accordingly, the Court respectfully recommends that Plaintiffs' motion be granted in part and that a default judgment be entered against Defendants Kensington and Gelin. With respect to damages, the Court recommends that Plaintiff Song be awarded $355,380, and Plaintiff Lucas-Barros be awarded $217,470, jointly and severally

as to both Defendants Kensington and Gelin. The Court further recommends (1) an award of prejudgment interest on Plaintiffs' damages at a per diem interest rate of (a) $87.63 from November 16, 2018, to the date of final judgment, for Plaintiff Sungchan Song, and (b) $53.62 from December 19, 2018, to the final date of judgment, for Plaintiff Lucas-Barros; and (2) an award of post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a).

*    *    *    *    *

This report and recommendation will be filed electronically and a copy sent by mail to Defendants Kensington, Gelin, Hernandez, and Buyers Club. As a courtesy, the Court also respectfully directs Plaintiffs to provide a copy of this report and recommendation to Defendants forthwith and to file proof of same by **February 5, 2024**. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Hector Gonzalez at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g., Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[] [judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated: Brooklyn, New York
        January 29, 2024

_Taryn A. Merkl_
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE